Nathan Railey
Inmate # 11897-003
United States Penitentiary Lewisburg
P.O. Box 1000
Lewisburg, Pa. 17837

①

The United States District For
The Middle District of Pennsylvania

Nathan Railey, Inmate # 11897-003 (Petitioner) ) Case No: 3:18cv1435

VS. ) Petition for Writ of Habeas Corpus Pursuant to 28 USC § 2241

David J. Ebbert, Warden for Lewisburg USP (Defendant) )

FILED SCRANTON JUL 19 2018 PER AMO DEPUTY CLERK

Petition for Writ of Habeas Corpus Pursuant to 28 USC § 2241

(1) Comes Now, Nathan Railey, Inmate # 11897-003, on this day, July 16th, 2018, acting Pro Se, humbly presents his Petition for Writ of Habeas Corpus Pursuant to 28 USC § 2241 to this court for it's services and review upon the claims listed herein. This Petition covers an incident report that ended a SMU (Special Management Unit) Referral along with historical references that culminate in a totality of circumstances that brings to question violations of due process, driven by liberty interests, the equal protection clause of the 14th Amendment by discriminatory actions; and the 8th Amendment's cruel and unusual punishment clause driven by differential treatment of prisoners.

I. Intro

(2) I understand that courts read Pro Se litigant's petitions in a liberal fashion and hold those pleadings "to less ~~strict~~ stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner 404 U.S. 519, 520, 92 S. Ct 594, 30 L.Ed. 2d 652 (1972). "Pursuant to 28 USC § 1915 A(b), the court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the court determine that the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact." Brown v. Saad 2018 US Dist. Lexis 79067 (ND W. Virg. Apr. 2018), quoting Neitzke v. Williams 490 U.S. 319, 325, 109 S. Ct. 1827, 104 L.Ed. 2d 338 (1989) (internal quotes ommitted and superceded by statute). Under Nietzke the court clarified section 1915(d) and the Federal Rule of Civil Procedure 11 to stem the flow and discourage frivolous filings of prisoners. See Neitzke @ 327. As

per Burgess v. Dunbar 628 Fed. Appx. 175 (4th Cir. 2015), a petition filed pursuant 28 USC § 2241 is the appropriate method to challenge a due process violation as part of a prison Disciplinary Hearing. The power to grant writ is delineated under 28 USC § 2241 with specific requisites dictated under § 2241(c)(1)-(5). As such, there is certain info I must provide to ensure proper jurisdiction of the court. Below is that info and requisites realized. (Note: this info provided is as per the 2241 Pro Se form that I was unable to attain timely due to various reasons.)

II. Personal Info

1. (a). My full name is: Nathan Allen Railey

(b). I have no other names or aliases.

2. Place of confinement:

(a). Name of Institution: United States Penitentiary Lewisburg

(b). Address: P.O. Box 1000; Lewisburg, Pa. 17837

(c). My Identification number: 11897-003

3. I am currently being held on orders by: The Federal Goverment of the United States

4. I am currently: Serving a 50 year sentence for having been convicted of a crime.

(a). I was sentenced in the Southern District of Alabama, in Mobile, Al. of the 11th Circuit in 2010.

(b). I apologize, I do not have my case # memorized or handy

(c). I was sentenced in oct. of 2011, I believe. (Please Note: I am in Special housing under the SMU Program and am limited in the materials and the material amounts allowed in my cell; hence not having my case files accessible)

5. I am challenging in this Petition: Disciplinary preceedings that were the casual action to my transfer to the SMU. I am also challenging the transfer to the SMU as well.

6. The incident number that gave rise to the Disciplinary Hearing is: 2992297. The Disciplinary Hearing was held on June 30th, 2017, at USP Tucson, wherein I was found guilty of "Attempted Introduction of drugs," code 111A, and "Conduct that jeopardizes the security of the Institution," Code 199, most like a 196 (illegal use of mail).

7. I did appeal to the Regional Director (Remedy # 914228-R1) wherein the code 199 was

7 (continued...) expunged but not the IIIA shot. I appealed to the central office (Remedy # 914228-A3) and was subsequently denied my request to expunge the IIIA shot. This successfully completed the appeals process and exhausted my remedies (see attached "Exhibit A," which is the response from central office). I also did appeal my SMU Hearing Referral that ended in my approval and subsequent transfer to the SMU. SMU Referral appeals go directly to the Central Office. I was denied my appeal and thusly exhausted the remedy process on that matter as well (see attached "Exhibit C," this is the response to that appeal). Below is the factual history and a more in-depth look at the matters described here follow by my claims.

## III. Factual History

(17) It should first be stated at the on-set of these proceedings that the behaviors discussed herein over the particular incidents being presented are just one instance of the abuses experienced by the petitioner. I have been subjected to these same manner of actions many times and in a myriad of ways. Constant fear of retribution and retaliatory action kept myself from seeking help from the courts. However, after succumbing to these same abuses before, culminating then, as now, in my transference to a prison known and with histories of assaults upon prisoners of the petitioner's category, I felt the only resolve is to approach the court. Therefore, though not necessarily pertinent to the events of which this filing contends, the history aforementioned is a necessity to understand the totality of circumstances that gave rise to this petition and subsequent request for relief.

(18) Herein I will try to be brief on these historic matters and it is best to review the attached "Exhibit B," which is a copy of two letters sent to the Office of the Inspector General (OIG) detailing the history and the current issue I faced at that time, which was the incidents being disputed herein. This will enlighten the court to the reality faced as a sex offender in the FBOP. From these two communiques of Exhibit B - and there were many more than just two - absolutely nothing happened, no inquiries made, no investigation, no return communique, nothing... This action, or in-action rather, is unbelievably common in situations like mine.

(19) In 2010, the year of my conviction, the FBOP had only one maximum security yard where sex offenders could walk safely, and the prison was/is the United States Penitentiary (USP) Tucson. It is the only USP that offers the Sex Offender Management Program (SOMP) and the Sex Offender Treatment Program - Non Residential (SOTP-NR) programs. If a sex offender was to try to walk any other yard besides Tucson, they would be assaulted

or worse and it is by this fact that Tucson was created. It is common knowledge among both FBOP Staff and inmates that sex offenders could not walk any other yards.

(20) Around 2015, USP Terre Haute was turned over to allow sex offenders and drop-out (gang drop-outs) and not too long after that did Coleman 2, a strictly drop-out yard, begin to allow sex offenders on the yard though safety was a major issue, especially at that particular time. Now these three yards are the only yards that sex offenders and drop-outs can safely walk. It breaks down thusly: USP Tucson is 90% sex offenders and 10% drop-outs, it is the safest yard for sex offenders and offers thier programs. USP Terre Haute is 50% sex offenders and 50% drop-outs. Generally, if you screw up at Tucson, you will be sent to Terre Haute usually and, though safe for sex offenders, issues of extortion, thievery, and other abuses are more prevalent than at Tucson. Then lastly, you have Coleman 2 which is 90% drop-outs and 10% sex offenders and is the least sex offender friendly. Historically, sex offenders did not walk there; it is only in recent times that some sex offenders were allowed to walk but extortion, thievery, and other abuses are rampant therein. This is the breakdown for safe yards for sex offenders.

(21) I was sent to USP Tucson originally in 2010-2011 and housed there until 2014, whereupon I recieved incident reports for use of cell phones among other high level shots. During my time there in Tucson, there were major issues there with extortion and thievery upon the sex offenders by the drop-outs. This behavior is not supposed to be allowed; however, the admin simply refused to deal with these issues and infractions. As stated in Exhibit B, I was directly responsible for running all extorters and thieves that were known to the admin. All of this is in my central file. By doing such, I was threatened by the Admin of Tucson that they would allow no gang activity on that yard — despite the ex-gang members ganging together to extort, steal, and sexually assault... I responded by asking them to handle the constant thievery, extortion, and sexual assaults that plagued the prison. Because I stood against the non-sex offenders, I was reprimanded. The whole thing was ridiculous.

(22) Ignorantly I got wrapped up in a situation in 2014 and recieved many 100 series infractions for various incidents having to do with introductions and/or uses of cellphones. It should be noted that I never was caught in possession of any cell phone though I was given infractions for such. It was all very stupid and I took and accepted those infractions; however, because of these shots I was transferred from USP Tucson, and at that time there was no yard I could safely walk. Terre Haute hadn't converted over all the way and Coleman 2 wasn't allowing sex offenders to walk — the inmates weren't allowing them to walk, that needs to be clear. They were assaulting them off the

yard if found... Some were on the yard in hiding. Therefore, Tucson, the Designation and Sentence Computation Center (DSCC), and Region decided in their infinite wisdom to send me to USP Victorville, one of the most active and dangerous yards in the system for gang members, much less me, a sex offender. This made no sense because it is common knowledge that sex offenders get killed on that yard and still, upon my arrival, I was lied to and told I'd be safe on the yard by the Admin and Unit Team. They were complicit in trying to get me assaulted. I knew better and "checked in" into the SHU (Special Housing Unit - 24 hour lockdown) under Protective Custody (PC).

(24) Not even there a week in the SHU, my door magically opens and four inmates storm into my cell whereupon I was sexually assaulted by instrumentation and thoroughly beaten. This unprecedented act wasn't the first or last time something of this nature took place at USP Victorville, specifically in the SHU. Lt. Williams, the then acting SHU Lieutenant, was responsible for all manner of reprehensible and repugnant behavior where inmates were severly assaulted both, physically and sexually, which was specifically created and/or planned by Lt. Williams and a specific group of officers. So much so that eventually federal charges and indictments were handed down on Lt. Williams and other CO's (Correctional Officers). Lt. Williams, having foreknowledge that he was soon to be indicted went into the parking lot of USP Victorville and shot himself in the face, committing suicide to avoid the ramifications of the charges. These statements are <u>not</u> false. I was housed in Victorville during the time of the height of this deplorable behavior and as such, was viciously sexually assaulted and still take medication to this day to combat the PTSD and anxiety associated to the event.

(25) The fact that I was PC and in the SHU and my door was opened could only mean one thing, that officers were involved and allowed this action. Because of this undeniable deduction, after the assault I feared for my life, that if I were to say anything over the incident that my door would be opened again except this time I would be killed. Fear is a powerful motivator and in this case, kept me from saying anything on the matter. As a matter of fact, the next day Lt. Williams strolled by to ask if I was alright and what happened to me since I had a blackened eye and other injuries. I responded that I was fine and all is ok. He merely nodded his head and said, "That's good," and shortly thereafter I was transferred to the Medium security FCI SHU for safe housing until my transfer.

(26) Despite the knowledge that certain classifications of inmates can't house with others, I was still ordered to go to the yard at Victorville and had to refuse to go and recieved 300 series infractions each time. I don't have the case law needed here but Neal v. Shimoda (citation unknown) and other cases clearly address inmate classifi-

cations and the foreknowledge that housing between certain classifications of inmates is a known security concern. Despite this history in law, all of this fore-mentioned was allowed. Eventually, the assault came to light and SIS at Victorville said it was "unfounded." SIS is Special Institution Security and investigate all major matters of institutional safety and security. This being "unfounded" is ironic since Lt. Williams took his own life and I'm positive it wasn't because "unfounded" allegations. None-the-less, absolutely nothing came from my report over the event. I still don't know what my file says over it but psychology takes the matter seriously hence my medication.

(27) By the time I transferred to Terre Haute, it had been converted over to safely house sex offenders; however, the drop-outs that I had ran off Tucson were there. A week and a half on the yard and SIS pulled me off the yard and locked me up in the SHU under PC status because word got to them that a group planned to assault me with weapons; this was driven by the events at Tucson where I ran off drop-outs. I was "PC Verified" meaning SIS (Special Institution Security) verified the threat against me and I was to be shipped from Terre Haute consequently, but didn't have to incur shots like Victorville where I was ordered to the yard, refused and recieved infractions. However, when they placed me in the SHU, they specifically housed me with an "active" inmate that SIS refused to allow to walk the yard. The inmate posed a threat to those on the yard and here I was being forced to house with him. I was very lucky he was soon to get out of prison and did not want to wait any longer by assaulting me and getting an infraction. How nice, but this was a point of contention between my cellee and the admin. How can they refuse him the yard cause he's active then place a sex offender in there with him? Do you believe this accidental? I don't but perhaps I'm jaded but it's my life being jeopardized. This isn't comical to me in any way, shape, or form.

(28) Having been refused to walk Terre Haute, I was shipped to Coleman 2. Coleman 2 USP was a very difficult yard to be at as a sex offender, I had issues the day I got there. Coleman 2 was rife with drugs and the drop-outs, usually all strung out on drugs, would steal and extort and those that recieved these abuses were sex offenders most of the time. Sexual assault was rampant on this yard as well and was usually based on extortive behaviors. I was there 9 months, and was extorted over 700 dollars before I finally snapped and assaulted one of my extorters. You may wonder why I didn't go to the Admin over the extortion... I did, they simply didn't care. I was told to "handle my business," as they put it. So I did, recieved a 224 fighting shot, and was summarily transfered back to USP Tucson. It should be noted that this fighting shot was used in my SMU Hearing as evidence that my "actions demonstrate an inability to function in a less-restrictive environment without being a threat to the secure and orderly operation of the institution." (See "Exhibit C": Central

Office's response to my appeal, Page 2, Para 1).

(29) As soon as I landed back in Tucson USP, I noticed that over the three year period I had been gone, things had gotten much worse on the yard. When I left it seems the cohesion of the sex offenders fell apart due to Admin threats and extortion, thievery, and sexual assault were rampant on the yard. So much so, that I fell victim to the extortion quickly myself which culminated in the incidents that gave rise to the SMU Referral and, subsequently, the petition before you today.

IV. Instant Offense History

(30) Firstly, it needs to be pointed out that despite my submittal of multiple Staff Requests to my Counselor, Case Manager, and Unit Manager to recieve a copy of the Disciplinary Hearing Report Packet (DHO Packet) over the incidents, I have been steadily refused a copy. The copy I did have went with my appeals to Region and Central and upon Central's refusal of my appeal, the exhibits were not returned, but kept. I desperately needed that DHO Packet to explain the events in an accurate manner, among other obvious evidentiary reasons; therefore, I must use memory with failing exactitude to provide the Instant offenses history. I will give my best effort.

(31) It should be also noted that specific issues of this nature of being denied access to legal materials and access to the courts and grievance process has been a major issue here at Lewisburg USP. A class action suit has indeed been filed in this court over this and the interference and abuse of mail here in the prison. See Civil Action #: 18-CV-00716 in this court, the Middle District of Pennsylvania in Scranton, Pa. You will find that there have been steps taken to limit inmates' abilities in litigatory actions against the prison. This is a seperate issue, though it affects this filing since I am not able to attain the DHO Packet. Perhaps in the response of the government I may recieve a copy of the DHO Proceedings. I could've provided evidence of my Staff Requests except that we are purposely refused the forms necessary to do this, which are two-ply carbon copiable for the inmate to specifically save a copy for his record. Transgressions such as these are in abundance here in the FBOP, this isn't just an institutional behavior. It is purposefully done to limit our ability to present evidence to our grievances and the courts. Because of the behavior, my statements above over Staff Requests get relegated to mere "allegations" instead of "physical factual evidence", resulting in the impotency in my position and standing in this court. I find this repugnant to FBOP Policy that was promulgated and specifically designed to estopp behaviors such as these. However, can you see the re-occurring theme herein? Moving on...

(32) On or around April 2017, I was pressured through manipulation tactics and threat devised from my

action of sitting in another area in the chow hall, to place some communiques to an Individual's girl friend over a visit. The sex offenders in the chow hall have limited seating causing many to stand and wait for an open seat while other groups enjoy plenty of seating. Despite constant complaints the the Admin, they ignore this issue which can very much develop into a security concern if the sex offenders just assumed another table from another group's area without the assistance of the Admin of the prison. Well, I knew many people and personally was trying to stay out of the issue because it had been three years since I comfortably walked a yard. I was invited to sit at the ex-Mexican mafia table, where I believed I had friends. I was sadly mistaken.

(33) I sat there for a couple weeks and had no issues and was clueless when I was approached by Mr. Doroteo Garcia about my seating at thier table. He believed that "they", meaning "himself," has allowed my presence there and, as such, I own a debt because of the "protection" they offered. This debt I owed was wrapped and packaged in threat if I wasn't to provide. Well, I'm not an idiot, I know prison games but these games are dangerous. What you choose can have serious consequences. As for my "payment" for these "protections", Mr. Garcia's only asked that I let his girl know how the visits go, make sure she knows what hotels are safe to stay at, and help her to and from visit. I have family there in Tucson and recieved visits every weekend. Since the things he asked weren't illegal in anyway, I saw no reason to just do what he asked and stop sitting in the Mexican Mafia section. That was the plan and like plans do, it went completely wrong.

(34) On or around May 5th, 2017, Mr. Garcia and his cellee, Mr. Banda, had thier cell searched and therein, a kite was found that had written thereon instructions about the Introduction of drugs, specifically by mail, and how to by-pass mail security. This had absolutely nothing to do with me. Subsequently, Mr. Banda and Garcia were placed in the SHU for investigation on this issue. Very shortly thereafter, I was called to the Lieutenant's office, accused of attempting to introduce drugs by Garcia's girlfriend's visit, which hadn't taken place and that had been canceled due to Garcia being placed in the SHU. I knew nothing of any attempted introduction of any type and didn't care if there was cause it wasn't me doing any introducing; however, the accusation against me obviously stemmed from my historic shots recieved in the prison back in 2014. Since I did not do anything illegal, I figured at DHO the matter would get quashed because there was absolutely no evidence I attempted to do anything. What someone else does at thier visit is not my concern or responsibility. Besides, I knew nothing and was told nothing by Garcia or otherwise to this affect. He was supposedly ripping some dude off for flight money for his girlfriend to fly to Tucson,

he was going to see her, assault a random sex offender, and leave Tucson. That was what I understood the matter to be. I honestly figured SIS officer Gallion was going overboard in assumptions and I felt it was a personal attack upon me to ship me again to some other diabolical place... I was right, it would seem. I was placed in the SHU on or around May 15th, 2017.

(35) I will guess it was around May 21st, 2017, that I recieved my UDC (Unit Team Disciplinary Committee) Review and they referred it to DHO. I specifically asked for three witnesses to be called, ~~two~~ hostile witnesses, and another whom was my cellee in the SHU. The two hostile witnesses were Mr. Garcia and Mr. Banda. Honestly, I didn't know what to expect from them but they were both in the cell next to me threatening me through the vent to keep my mouth shut, don't snitch, etc... it was most irritating considering I had nothing to do with whatever it is they were or weren't doing. At the UDC, I also said that I did not want a staff Rep because they are completely useless. They help nothing. The hearings are not impartial and having a staff Rep changes nothing really except when you need copies of reports or if there's a report you can't read but they can. In my case, at that time, there was no evidence outside the scope of the incident that I wasn't able to evaluate therefore a staff Rep was pointless.

(36) Finally, my first DHO hearing was on or around June 1st, 2017 (estimated) and the DHO officer was Mrs. Cuifo. I was fairly confident walking into this DHO hearing cause the only thing they had was conjecture that something was going to happen and an email from my brother and I about nothing. (Note: This is where I need the DHO Packet that I was unable to attain. In "Section II" it lays out what SIS alleged and the evidence relied upon. The fact that I'm being refused this legal material is unbelievably frustrating since this filing hinges upon it's content. Any help the court can provide in the attainment of this document would be greatly appreciated).

(37) To provide an overview of the evidence used, and since Lewisburg simply refuses any assistance upon this legal matter, I will do my best. In the evidence it stated that Garcia, another Inmate (I can't remember his name), and I conspired to introduce drugs at the visit of Garcia's girlfriend. This other inmate had someone paying for Garcia's girlfriend's flight to Tucson. SIS said I used someone else's account, Inmate Blankenship, to email Garcia's girlfriend with a phone number to the individual paying for the flight to call to cancel the flight to Tucson. This was on the day Garcia got locked up. It should be noted that I did not have Garcia's girlfriend's email on my account at all. I never emailed her directly ever, through Blankenship's email or otherwise. However, I

know that Blankenship did send an email to Garcia's girl when he got locked up. I was there for that. How SIS concluded that it was me that sent an email from someone else's email dumbfounds me because I have my own email but I was not "friendly" like that with Garcia's people. This was extortion, not a friendly action on my part to help his girlfriend, she was not on my email list. The phone number sent through Blankenship's email was linked to a person who was a contact of the un-named inmate's account. This is how the correlations happened.

(38) SIS investigated Garcia's phone calls and emails and found nothing but assumed code words for drugs and introductions. I have no idea the veracity of those assumptions but out of all my many emails, SIS used one I sent to my brother where I referenced "things" obscurely and said I was using code with that word. I can't remember what I was refering to but I got visits every week so there's context not included in emails alot since it is based on visit's conversations. I refered to nothing drugs though because, (a). I am near my family and get visits every week, and (b). I was trying to stay out of trouble cause I had been around the block as far as prisons go and wanted to relax. It took three years, a sexual assault, being placed with an active inmate at Terre Haute after the threat of being stabbed, fighting an extorter at Coleman 2, and spent over 2 years locked down in the SHU to get back to Tucson. I wasn't doing anything illegal... Nothing!! At the first DHO, this is all they had... nothing but assumptive pretext with no supportive factual evidence to support thier claim.

(39) The 1st DHO hearing was short-lived. Mrs. Cuifo asked if I planned to call witnesses and I explained again to her, as I did the UDC, that I have two hostile witnesses and my cellee to call with no Staff Rep. She said she'd have to re-schedule the hearing to call the witnesses. I did explain very clearly that this incident is assumptive, based on supposition with no reliable factual evidence and that I was not guilty. I didn't attempt or conspire to anything nor did any introduction take place. She rescheduled it.

(40) Two weeks later, so around June 17th, 2017 or so, I was called to DHO again for the second time. I came in, and oddly, Mrs. Cuifo asked if I planned to call witnesses. I said, "yes," and explained again. This is when things changed. She informed me that between my last DHO and this one, SIS conveniently recieved a Confidential Informant (CI) report. She said this matter-of-factly and asked if I still wanted to fight the incident? I laughed at the absurdity of the situation and said, "Yes! I didn't do any thing!" I asked about the contents of the report and was told that I am not to know. I laughed again and stated that though I don't know what that CI Report says but if it's about me in any way having to do with an introduction then it's false. She was frustrated by

my refusal to admit guilt and again had to reschedule the DHO hearing to call my witnesses.

(41) On June 30th, 2017, was I brought in for my third and final DHO Hearing. Mrs. Cuifo called my witnesses first. Garcia met with her and stated that he "punked me" to ensure the visit. I consider this an open admission of extortion. She called Mr. Banda and he said that I had been extorted over the table issue in the chow hall... another blatant admission and at this time Banda had already been released back to the yard. I was actually surprised at his testimony. My cellee stated that he was supposed to tell her about Garcia cursing and threatening me in the vent and described it to her in graphic detail. All of the testimony, even from the hostile witnesses displayed exactly what I explained, that I had been extorted. This testimony is recorded on the DHO Packet that I don't have, though not in detail as I would have liked. Still, the testimony listed thereon displays the extortion I speak of. I'm betting that Mr. Garcia's shot and DHO hearing has his testimony over the events too. I wonder what they display. Despite this testimony, I was still found guilty.

(42) Mrs. Cuifo went through the emails and went over all the evidence and concluded with the fact that I did nothing illegal on email, despite SIS allegations, but still gave me a 199 shot, instead of a 196 they originally provided. Though, she said the 199 is "most like a 196 shot." That made no sense. I also had a 217 shot for sending or recieving money that she dismissed because there was no evidence of such. I never once denied that I was having my family help Garcia's girlfriend with where to stay, what to wear at visit, and getting back and forth since money was an issue for her. I could've lied about this all but it's not illegal for my family to do such. I've done it before to help a woman coming from Australia who had no clue how visits work, etc., and it was from that that I figured this action of helping Garcia's girlfriend no big ordeal. I recieved no shot over this specific topic; however, Mrs. Cuifo found me guilty of the 111A (introduction attempt). I immediately inquired how she came to that conclusion? She stated that she put all of the decision's weight on the CI Report, a report that I couldn't read, couldn't build a defense against, and had no clue to it's contents. I inquired upon it's contents and she said she couldn't tell me anything on it. I specifically asked, "Then how can I defend myself if I can't know the evidence used against me?" She became rude and stated that her word was final! I snapped back that her word isn't, it is appealable and that's what I'll do because this is unjust!

(43) I proven extortion by the witnesses' own lips. Extortion is an infraction that recieves disciplinary sanctions and here is the very proof I described within the "III. Factual History" section. Extortion, thievery,

and all manner of abuses are allowed upon sex offenders. The DHO completely ignored the testimony of three inmate witnesses, in which two were considered hostile, and my own testimony that I was being extorted and put all her decision's weight behind an inmate CI's testimony because it provided an indefensible way to find me guilty of the infractions since absolutely no other evidence was provided to support the claims. Her purpose, driven by the Admin of Tucson, was to find me guilty; impartiality ignored. How does one CI's testimony have more weight than four? Not only that but CI testimony on Tucson's yard is easy to come by. If SIS was to threaten to send you to Victorville, like they have done and been doing, then any sex offender will say whatever SIS wants. I do not know what was said in that report but I can say unequivocably that it is false. Beyond that report's existence, which came at an odd time in between the first and second DHO Hearings, there was no evidence to support the infractions... period.

(44) To further pour salt on this wound, I was referred to the SMU (Special Management Unit) in Lewisburg, Pa., a 24-hour lock down facility known for it's dangers and the violent active inmates housed there. I recieved my SMU Referral Notice on Nov. 17th, 2017, and the hearing followed shortly thereafter on Nov. 21st, 2017. The hearing was held by phone conference and was a complete joke. Again, the Referral Notice and Approval Notice was used as evidence in my BP-11 grievance/appeal to Central office and they kept those exhibits, therefore I will refer to the SMU Program requirements listed in Policy 5217.02, which shows what criteria is used in this decision process.

(45) Under P.S. 5217.02, "2. Referral Criteria," it lists those criteria used. They are as follows, did the inmate: "①. Participate in disruptive geographical group/gang-related activity; ②. Had a leadership role in disruptive geographical group/gang-related activity; ③. Has a history of serious or disruptive disciplinary infractions; ④. Committed any 100-level prohibited act, according to 28 CFR § 541, after being classified as a member of a disruptive group pursuant to 28 CFR § 524; ⑤. Participated in, organized, or facilitated any group misconduct that adversly affected the orderly operation of a correctional facility; or ⑥ otherwise participated in or was associated with activity such that greater management of the inmate's interaction with other persons is necessary to ensure the safety, security, or orderly operations of Bureau facilities, or protection of the public." They look back 24 months in your disciplinary history to determine these requisites. Obviously you see the way the SMU was supposed to be geared; upon the inmates involved in gang activity, usually viscious gang related assaults.

That was the SMU's purpose but if you look at criteria (3) and (6), they allow any high level shots to determine your approval using the normal "boiler plate" rhetoric of "institutional safety, security, or operations" which is a subjective and ambiguous method of inclusion to fit anybody and everybody recieving a high level shot. My 111A, 199, and previous 224 fighting shot was used to establish I fit the criteria that the SMU was necessary. My objections and pleas that this was all based on extortion was ignored and summarily I was shipped to Lewisburg USP on Dec. 23rd, 2017.

(46) Before I was shipped to Lewisburg, at USP Tucson in the SHU, I became over-whelmed in anxiety and stress at the prospect of transfering to Lewisburg which, like Victorville, was a viscious place known for the violence of those housed therein and I attempted suicide. Words cannot express the psychological issues that cause such a decision. Victorville's impact on my mental health was deeply scarring. I didn't feel I could go through that again. I survived though hospitalized multiple days before being released back to Tucson where they immediately had me see an outside psychiatrist who increased my anxiety meds only since the FBOP formulary allows for no other medicine to assist in PTSD and severe anxiety. The meds I need, I can't get.

(47) Since my arrival here at Lewisburg on Dec. 28th, 2017, it's been nothing but trials. My legal work (along with an original birth certificate, my Native Blood quantity card, and copy of Social Security card) was confiscated, I was placed on a punishment block containing active gang members, my mail has been unbelievably harassed, and have been refused all manner of legal materials, legal recourse, and access to the courts, culminating in a multi-inmate lawsuit mentioned earlier. I appealed the DHO proceedings to Region and the 199 was expunged but when I approached the Central offices they refused to expunge the 111A. I appealed the SMU hearing and they just restated the boiler plate context aforementioned and denied my release back to Tucson, the specific yard a sex offender should be at. (See Exhibit A, Exhibit B, Exhibit C...) This has all become very trying, very difficult, and stressful.

(48) Regardless of the issues faced here at Lewisburg, if these infractions would've been handled correctly, I would've never came here cause I never would've been approved or met the criteria to be sent here. I admitted to my historic actions on the cell phone ordeal back in 2014, but I did not have anything to do with any introduction. I was extorted and that was my only involvement, and the record directly reflects my claim. Below you will find the claims I present to this court.

## IV. Claims

(49) I make the following claims to this court:

(50) (1). That I have a liberty interest in my good conduct time that has been taken away by these infractions and it has a direct impact upon my incarceration length, and thereby is the liberty interest created. (See Wolff v. McDonnell 418 U.S. 539 (1979)) Since the DHO ignored my statements and my witness statements, she was not impartial, and due process was thereby violated, and by my liberty interest noted above does due process defined under the 5th + 14th Amendment become an underlying constitutional requisite of the DHO Hearing.

(51) (2). That I have a liberty interest in avoiding long durations of SHU/SMU time and that these conditions in the SHU, and especially the transfer to the SMU, are "a significant or atypical departure from the ordinary incidents of prison life" since I am 23 hours locked down a day, no freedom to move about, and am housed with active violent gang members in a prison without proper ventilation. Sandin v. Conner 515 U.S. 472 (1995). Because the DHO completely ignored evidentiary testimony and was not impartial was due process violated and by the liberty interest stated above does due process become an underlying constitutional requisites of the DHO Hearing.

(52) (3). This particular claim mirrors the 2nd claim except that it follows that I have a liberty interest in long durations of SHU/SMU time as it pertains to the SMU Referral Hearing. My pleas were ignored as I explained in said hearing that the infractions were without merit and predicated upon extortion and was ignored, despite evidence of witness statements to this affect, and thereby due process was violated by, once again, impartiality being completely ignored.

(53) (4). That I was discriminated against and was given differential treatment because of my sex offender classification category. This is particularly geared at the DHO Hearing since it was undeniable extortion and coercion by threat was a factor and was completely ignored though these behaviors are direct violations of policy. The only deduction can conclude that this is a discriminatory action purposely forced upon me.

(54) (5). That, as it pertains to my SMU Hearing, I was discriminated against and was given differential treatment because of my sex offender classification category. I made it very clear at the hearing that the shots were without merit and were based upon coercive threat and extortion and that the DHO directly reflected this in evidence under witness testimony and was completely ignored. The only deductive conclusion reached is discrimination and the only reason would be my sex offender status.

(55) (6). Though meeting the Farmer v. Brennan 511 US 825 (1994) and Wilson v. Seiter 501 US 294 (1991) "objective" and "subjective" standard can be difficult, I contend and claim that I am being subjected to "cruel and

(G.(continued...) unusual punishment" as defined under the 8th Amendment. Reaching the objective prong, I contend that given my history of sexual assault by active gang members in SHU housing at Victorville USP, that housing me in Special Housing in Lewisburg around active gang members, exactly as the same as Victorville, directly creates conditions that adversly affect my mental and psychological health. The is especially the case when Lewisburg has a specific block for drop-outs and sex offenders on X-Block but I'm refused housing there.

(56) It has long been proven that long durations in a locked down environment directly creates mental health issues. Even President Obama addressed this and made the SMU Program shorter because of such. See Jones El v. Barge 164 F. Supp.2d 1096 (W.D. Wisc. 2001). Not only this but certain categories of inmates like sex offenders have an implicit threat against them by other inmate categories (Neal v. Shimoda 9th Cir... once again citation unknown). It is also without doubt I suffer from PTSD, suicidal issues, and severe anxiety from the attack at Victorville and have been provided medication to manage this for which I recieve medication. Since it has been proven long durations of SHU time affect mental health and I already suffer mental health problems culminating from almost the exact same circumstances that gave rise to my mental problems in which I find myself currently being held, the FBOP is estopped from claiming that they are unaware of the conditions that I am currently being held are not making my mental illness worse. This would meet the subjective prong as well. It should be pointed out as well that even PS 5217.02 "Special Management Units" Program, under "3. Referral Procedures", under "b. Hearing" it specifically speaks on certain mental illness precluding an inmate from SMU Referral and, under "e. Mental Health Removal" it clearly addresses that some inmates mental illnesses can cause them to be removed from the program.

(57) I have to mention here that while at USP Tucson, specifically after my attempted suicide and after I seen the outside psychiatrist, I spoke to psychology services specifically on this issue. Not only was I ignored but my psychology care level is at a level 1 despite my medication, the PTSD, anxiety, suicide attempts, etc... The matter of my psychological health is thoroughly ignored by allowing me to be send here. I informed psychology services here at Lewisburg but they flat out didn't care whatsoever. They even allowed my meds to be decreased when I got here. It's all unbelievable.

(58) I have been placed in the exact same conditions wherein I was assaulted last time. It is understood that just because I'm being housed in the SHU around active gang members, that doesn't mean I will be assaulted again. However, placing me back into the same situation that culminated in a mental illness is not

conducive to healing or the rehabilitation of said mental illness. If anything it becomes detrimental upon my mental health, which is what I claim. I haven't been outside my cell for rec but one time and that was when I was housed on X-Block, the drop-out/sex offender Block. Since being placed on B-Block, where it is all active gang members, I haven't went to rec once, which took place in Mar of 2018. So I've been outside my cell once to rec since the beginning of 2018. In B-Block they have to remove us from the cell to shower, I find the anxiety difficult to manage when I get taken out of the cell to shower, so I therefore shower infrequently and "bird bath" at my sink. Medical have tried to remove my ~~meds~~ psyche meds, succeeded in removing my pain meds for a spinal condition, and lowered my psyche meds because the medical doctor, not a psychiatrist, dictated it was "too high" despite the fact that an outside psychiatrist was the one that prescribed that drug amount. Complicate that with the refusal of access to the courts and mail abuse that created the lawsuit mentioned earlier and you find this whole ordeal has been tragic upon my mental health. I've been locked down now close to 14 months with at least 9 more months before I complete the program. That's two years constant lock down over infractions that were not treated impartially, the ignoring of the coercive and extortive elements, and provided more mental health complications by the transfer and segregation. This is the very concept of "deliberate indifference" needed to meet the subjective prong under Farmer.

(59) If anything, the "totality of these conditions" should reach the necessary criterion required under Farmer and others since it required all the claims aforementioned to culminate in the underlying conditions. This overall effect should meet the level of unconstitutionality defined under the 8th Amendment. See Palmer v. Johnson 193 F.3d 346 (5th Cir 1999).

VI Conclusion

(60) In conclusion of this petition, I state that there is all sorts of case law I can quote until I'm blue in the face over liberty interests and due process beyond those quoted above and I am familiar with Wolff v. McDonnell 418 U.S. 539 (1979), wherein the Supreme Court laid out the core entitlements driven by good time credits: (1) Written notice of the disciplinary violation; (2) the right to call witnesses at their hearing; (3) assistance in preparing for the hearing; (4) a written statement of the reasons for being found guilty; and (5) a fair and impartial decision maker in the hearing. I do not contend any but the 5th entitlement that was violated since key evidence was ignored within the hearing. Absolutely no evidence that was accessible to me was used in the DHO decision since



she pointed out herself that the weight of her decision was upon the CI Report; evidence to which I had no access to nor could defend against. All the statements and evidence used in the hearing was allegations, assertions and conclusory statements with no underlying factual evidence driven by witnesses or physical material evidence. I, on the other hand, had direct testimony from those party to the allegations that directly state that threatening, coercive, and extortive measures were used to force my involvement and what little involvement my actions provided were indeed not illegal in any way. To claim I had fore-knowledge of any impending introduction upon a visit that was not my own is presumptive and suppositional only and not bolstered by factual evidence. They provided heresay whereas I provided direct testimony to the behaviors I claimed. As such, this disposition displays a lack of impartiality on the behalf of the DHO, resolving to a violation of due process wherein liberty interests were affected, discrimination becomes apparent, ending in deliberate indifference upon my mental health by both my criminal category and history of mental illness qualifying the requisites of cruel and unusual punishment.

(61) I am locked down 24 hours a day and have been for 14 months with at least 9 more to go until I complete the SMU Program. I am housed in a housing block full of active gang members and though we are locked down, the circumstances are exactly as those wherein I was sexually assaulted and suffered significant psychological issues. This combination is undeniably conditional to my mental and psychological health and this situation was created by violating my constitutional right of due process.

(62) Regardless of the outcome of this action in this court, I have already suffered actual injury from these actions and as such, even if the court rules in my favor, I will carry these injuries throughout my incarceration. This is far from the first time I have succumbed to similar treatment, I do however hope it is the last.

## VII: Prayer for Relief

(63) I beg and humbly pray that this court:

(64) (1). Agree that the claims herein have merit;

(65) (2). Remove the 111A infraction and expunge it from my record, giving back the good conduct time taken and to reinstate all the sanctioned privelages;

(66) (3). Order my release and removal from the SMU Program due to the due process, discriminatory, and/or cruel and unusual punishment violations and order my transfer back to USP Tucson where I can recieve the programs that best befit my criminal category as a sex offender since Tucson USP is the only prison that offers such programs.

(67) I humbly pray the court agrees to these requests of relief. All statements herein are true and accurate to the best of my abilities and are provided in "good faith" under the penalty of perjury.

Respectfully Submitted,

July 16th, 2018
(Date)

[signature]
(signature)

Certificate of Service

I, Nathan Railey, Inmate # 11897-003, on this day, July 16th, 2018, states that the foregoing Petition for Writ of Habeas Corpus Pursuant to 28 USC §2241, Motion to Proceed In Forma Pauperis, Notice of Authorization, and Notification of Initial Screening and Review Pursuant 28 USC §636, was placed in the Lewisburg USP Mailing system and that, under the penalty of perjury, all statements, comments, and opinions in the fore-going were given in "good faith" and are true and accurate to the best of my abilities. The foregoing motions listed above were sent to: The U.S District Court for the Middle District of Pennsylvania; William J. Nealon Federal Building + U.S. Courthouse; 235 N. Washington Ave; P.O. Box 1148; Scranton, Pa. 18501 only...

Respectfully,

July 11th, 2018
(Date)

[signature]
(signature)




NATHAN ALLEN RAILEY, 11897-003
LEWISBURG USP UNT: B-BLOCK QTR: B03-~~327L~~ 328
2400 ROBERT F. MILLER DRIVE
LEWISBURG, PA 17837

RECEIVED
Warden's Office

JUN 1 1 2018

USP Lewisburg

**Administrative Remedy No. 914228-A3**
**Part B - Response**

You appeal the June 30, 2017 decision of the Discipline Hearing Officer (DHO) regarding incident report #2992297, where you were found to have committed the prohibited act of Attempted Introduction of Drugs, Code 111A. For relief, you request the incident report be expunged.

Our review of your disciplinary proceedings indicates compliance with Program Statement 5270.09, Inmate Discipline Program, and we concur with the response provided by the Regional Director. The DHO's decision was based upon the evidence detailed in Section V of the DHO report. We find the determination of the DHO is reasonable and supported by the evidence. Your Due Process rights were upheld during the discipline process. The sanctions imposed were commensurate to the severity level of the offense committed and in compliance with policy.

As indicated by the Regional Director, upon review of your Regional Administrative Remedy Appeal, it was determined the prohibited act of Code 199, Most Like, Code 196 should be expunged; however, there would be no change to the finding of guilt for Code 111A. We find the Regional Director's decision to expunge Code 199, Most Like, Code 196 is appropriate.

Accordingly, your appeal is denied.

5/14/18
Date

Ian Connors, Administrator
National Inmate Appeals

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Riley, Nathan A. — LAST NAME, FIRST, MIDDLE INITIAL | 11897-003 — REG. NO. | X-Block/cell 114 — UNIT | SMU USP Lewisburg — INSTITUTION

**Part A - REASON FOR APPEAL** This is a re-write... This grievance is an appeal over Incident #2992297, wherein I was found guilty of a 111A and a 199. I have filed this appeal with the Western Regional office and never recieved a response despite giving thier office extra time beyond the 30 day extension that they requested. Please review the document labeled "Exhibit A" which is the Western Regional office requesting an extension of time. Thier response was due Oct. 29th, 2017. It is now Jan. 23rd, 2018 and this delay was very critical considering the fact that I had my SMU Hearing Referral on Nov. 21st, 2017 and it was dictated by these very shots that I met the criteria to be designated to the SMU. This matter should've been resolved before even the SMU Hearing Referral on Nov. 21st, 2017 and now, almost three months later, I sit in the SMU re-writing this appeal to Central, and still have heard no response from Region. Please refer to the document titled "BP-11 Continuance Page" for the rest of the matters discussed in the Administrative Remedy/Appeal.

Jan 23rd, 2018
DATE

"By:" /s/ [signature] 28 USC § 1746 "Without Prejudice"
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

6-30-17
111A

RECEIVED
MAR 20 2018
Administrative Remedy Section
Federal Bureau of Prisons

RECEIVED
FEB 07 2018
Administrative Remedy Section
Federal Bureau of Prisons

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 914228-A2

**Part C - RECEIPT**

CASE NUMBER: 914228-A3

Return to: LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT:

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-11 Continuance Page

Under the Disciplinary Process (PS 5411.5) there is only a two-line dictation over the suffix "A" and what the "attempt" addition to shots defined. It is unbelievably undefined and allows for abuse of discretion and allows shots to be given under assumption and conjecture. In those shots I recieved, all that is present is conjecture and it is all based on someone else's actions and not my own. Me helping someone get their girlfriend here to Tucson does not mean I attempted anything. The letter found in Doroteo Garcia's cell had nothing to do with me either. If he decided to attempt anything at his visit does not mean his attempt is mine. Besides, no attempt was made at all. No Contraband was caught coming in the mail or in through visit. This whole ordeal is based on conjecture, assumption, and supposition.

To further prove the conjecturization of the shots given, if you read the shot in full you will notice that not once was the word "attempt" used to define any action of myself or any of the suspects therein named. The word specifically used to define the actions used is that we collectively "conspired" to introduce contraband and this distinction is significant since there is no shot nor suffix for "conspiring."

I have a liberty interest in avoiding SHU time and in my good-time credits. Therefore I am afforded due process by my Constitutional Rights. I can quote case law like Wolff v. Mcdonnell, Sandin v. Conner, and many more to satisfy this requisite. Only after my DHO Hearing had begun was I informed that new confidential Information had been provided. I had three DHO meetings before the hearing was completed. At the second meeting was I informed of this new info. I was not given an option of a Staff Rep and therefore, not able to build a defense against such. I had three witnesses testify that the actions I did take were through extortion and threat and this was discegarded. All my statements and defense was completely discregarded. This whole process from the investigation, to the shots given, to the sanctions, displays a complete abuse of the disciplinary process.

I have wrote your office, region, and many divisions within the FBOP and OIG about this flagrant of abuse of the disciplinary process. All the issues in this appeal are intrisinctably linked and lose definition when itemized. It should again be noted that my SMU Hearing was held, I was referred, and am now subsequently a part of the SMU program. I am taking these shots and appeal very seriously and prepared to take any and all the necessary steps, even legal steps if required.

Jan. 23rd, 2018
(Date)

"By:" /s/ [signature]
28 USC § 1746 "Without Prejudice"

"Exhibit B"

"Original Copy - Date: Oct. 16, 2017 - NAR"

**U.S. Department of Justice**
Office of the Inspector General
*Investigations Division*
*1120 Lincoln Street, Suite 1501*
*Denver, Colorado 80203*

August 28, 2017

Dear Mr. Railey,

The purpose of this letter is to acknowledge receipt of your correspondence dated July 11, 2017 and July 13, 2017. Our office, the U.S. Department of Justice (DOJ), Office of the Inspector General, investigates allegations of misconduct by employees and contractors of DOJ, as well as waste, fraud and abuse affecting DOJ programs and operations. However, the matters that you raised are more appropriate for review by another office within the DOJ. Therefore, your complaint has been forwarded to:

Bureau of Prisons
Office of Internal Affairs
ATTN: Lamine N'Diaye, Chief
320 First Street, NW, Room 600
Washington, DC 20534

Any further correspondence regarding this matter should be directed to that office.

Any additional material you provide our office regarding this matter will not be forwarded to the above agency. Instead, we recommend that you correspond directly with that agency if you have additional information to provide. Please be advised that this is the only correspondence you will receive from this Office regarding this matter.

If you have new information that involves other allegations or issues regarding DOJ employees, contractors, programs or operations, please feel free to submit that information to us.

Thank you for giving us the opportunity to review your concerns.

Sincerely,

Office of the Inspector General
Investigations Division



3
ntiary Tucson

PHOENIX AZ 852
12 JUL 2017 PM 10 L

X-RAYED Legal Mail
JUL 17 2017

INSPECTED 7

DOJ MAILROOM

Office of Inspector General
U.S. Department of Justice
950 Pennsylvania Ave. NW
Suite 4706
Washington DC. 20530

Legal Mail

l Mail

INSPECTED 14

20530-

Nathan Railey
Inmate # 11897-003
United States Penitentiary Tucson
P.O. Box 24550
Tucson, Az. 85734

Office of Inspector General
S. Department of Justice
50 Pennsylvania Ave, NW; Suite 4706
Jashington DC. 20530

ATTN: Inspector General

I have filed complaints, grievances, and even motions with the courts. I have filled out cop-outs and sent them to werypne and am at a loss to how to handle this situation. I am a sex offender and have been subjected to all sorts of liscrimination and abusive behaviors throughout the course of my encarceration. However now, I can't even program ithout being given undeserved shots, placed in the SHU, and summarily transfered, or like now, threatened with Spou.

USP Tucson is a specific prison to house sex offenders. It is specific for sex offenders and is the only USP that offers the SOTP-NR program specific for sex offenders. The problem is the administration allows extortion and thievery against sex offenders on a massive level and completely handles sex offenders differently than other inmate types. I, for one, have been severely subjected to this discriminatory action.

I was housed here at USP Tucson from 2010 to 2014. During this time, I witnessed so many be extorted and stolen from. As I became more well-known, I began handle things in the Unit for the sex offenders. After seeing the stealing and extortion so much and the Administration and SIS refusing to address this matter, I got frustrated. I grouped the sex offenders together to stand against this. Then I personally went to the non-sex offenders over the extorters/thieves in their cars and said that they have to go or we'll make them go. It was decided by the non-sex offenders to comply and these thieves were run off. These non-sex offenders that were run off were naturally pissed and I made enemies that day. However, I did not expect that SIS would threaten me over the issue. They said that they will ship us to active yards if we try to "gang" up. This threat is very real. We get killed at active yards and that's whether or not we're under protective custody in the SHU. They complaint I had about them allowing extortion and thievery fell on deaf ears.

I got in trouble in my association with cell phones on the yard. I was shipped to an active yard, Uictorville USP In Victorville. I was placed in the SHU under PC (Protective Custody) and was placed in a "hard" cell - a single man cell. Later, my cell door was opened and three or four inmates were allowed to run up in the cell and sexually assault me. Tell me... how did that door get opened P Does the officers allow this on other inmates or just sex offenders? I was asked later why I didn't say anything about

he incident from both medical and psychology and I guess they must not understand that if the officers allowed the door to pen once, then it would certainly seem feasible that they could let it open twice. By saying anything, I'd be signing my own death warrant. Eventually, it did come out and what happened...? Nothing... that's what.

From Victorville USP, I was sent to Terre Haute USP which had been changed over to a drop-out/sex offender friendly yard. Remember the drop-outs/non-sex offenders I ran off from Tucson USP? They went to Terre Haute USP because the only administration at Tucson didn't send them to active yards. Of course not, they're not sex offenders. I went to the yard anyways but was only there a few days before SIS took me off the yard because one of those dudes was supposedly going to stab me. They put me in the SHU as PC and lovingly placed an "active" member in the cell with me. He wasn't a gang member but wasn't allowed to walk Terre Haute because he was still considered "active." I do not believe it is customary to place "active" inmates with sex offenders. None-the-less, we managed to get along fine only because he was soon to go home. Still... housing me like that is ridiculous, especially after Victorville.

I was sent to Coleman 2 USP which is a pre-dominantly drop-out yard. Sex offenders walk there but by no means is the yard sex offender friendly. On that yard, after being extorted enough times, I snapped out and fought one of my extorters. From that fight, I was shipped back to Tucson USP. I wasn't on Tucson's yard long before I noticed that the extortion and thievery has gotten ten times worse. Because of my family being close by and the visits I get, it wasn't long before I was approached and extorted to do something through visit. I refused to do anything beside pass a verbal message to this guy's girlfriend so she could get a flight down to Tucson to visit him. Well this gentleman, inmate Garcia, got caught with a kite/letter he was sending out through a card and got put under investigation. Because of my helping get info out for his girlfriend, I too got sucked into his crap. Even though I had nothing to do with this inmate's actions or supposed actions, I was given disciplinary actions. I specifically addressed that any involvement I had was through extortion and had witnesses to this, even the direct extorter said he extorted me but still I was given disciplinary action. In no emails, no telephone calls, and no letters was my name, my family's name, or anything having to do with me and drugs ever mentioned. I've never had a drug shot, never had a dirty urine shot, nor do I have any drug history. I have never been involved in drugs period. Despite my witnesses and all these facts, the extortion got completely ignored and I was found guilty regardless. Now they are speaking about trying to screw me over these shots. Do you see the issue yet?

I have been purposely sent to active yards, been sexually assaulted, been repeatedly extorted from, and suffered an unbelievable amount of discrimination and have voiced my issues many many times over. When is it significant enough to get some sort of action? I have grieved, I have filed, I've even written your office before. What does it take to get someone to investigate these allegations? Come here to Tucson, ask the inmates about the extortion, ask them about SIS, and ask them about how the Administration handles sex offenders. We are the most discriminated inmates in America. We need some help! Please help us!

OIG-INV-HQ
RECEIVED

Thank You,

[signature]

Nathan Railey
Inmate ID# 11897-003
United States Penitentiary Tucson
P.O. Box 24550
Tucson, Az. 85734

Legal Mail

PHOENIX AZ 852
14 JUL 2017 PM 5 L

Legal Mail

INSPECTED 7

INSPECTED 14

Office of Inspector General
U.S. Dept. of Justice
950 Pennsylvania Ave, NW; Suite 4706
Washington DC., 20530

Legal Mail

X-RAYED
JUL 20 2017
DOJ MAILROOM

20530-

DW

July 13th, 2017

Nathan Railey

Inmate #11897-003

United States Penitentiary Tucson

P.O. Box 24550

Tucson, Az. 85734

Office of Inspector General

U.S. Department of Justice

950 Pennsylvania Ave., NW; Suite 4706

Washington DC. 20530

Attn: Inspector General

I write your office because I am at a loss as to what to do. Your office isn't the only one I am writing. I am writing the regional office, the central office, and your office. Anything at the administration level is useless because of the discrimination we're subjected to. I have wrote your office over my extortion issues already but I need to address a very particular issue being used by the Administration, SIS, and even the DHO (Disciplinary Hearing Officer). Nowhere besides here at Tucson has the disciplinary process been used so aggressively to give people undeserved shots and to summarily transfer or SMU inmates. It is beyond ridiculous.

I am not the only one facing this same agressive disciplinary action but I will only describe mine in detail. I recieved a very big shot - a criminal level shot - for someone else's supposed actions. A Kite (a letter to be hidden in a card) was found in someone else's cel. This kite had nothing to do with me. My name or my family's name was nowhere on it in code or otherwise. The inmate's name is Doroteo Garcia. SIS thought, assumed, and conjectured that Mr. Garcia was going to bring drugs into the facility by visit; a seperate intention than the kite and over two seperate drugs. Both of them have absolutely nothing to do with me. Where I come into the picture is I was extorted to pass a verbal message through my visit for his girlfriend to contact someone to get her a flight and hotel for her visit with Doroteo Garcia. This extortion was proven at DHO. However, besides the extortion factor, a factor already mentioned to your office, the main issue here is this kite was not found in my cell nor was it my visit wherein it was assumed that an introduction was to take place. How am I being held responsible for someone else's behaviors? I recieved a 111A and 199 shot, both criminal level shots. I had nothing to do with criminal behavior. It wasn't my actions that were alledged to do anything.

My case is just one of many cases. An overwhelming amount of 111A shots, utilizing the 'A' suffix for 'attempted.' In this case, the 'attempted' declaration is being used judiciously and assumptively on all manner of situations. It is being used in a very discriminatory manner. The reason for this is due to the nature of the inmates housed here at USP Tucson. It is a sex offender and drop-out yard. To say someone "attempted" an introduction of contraband based on assumption and conjecture is a significantly overbroad use of the disciplinary process. To give inmates "attempted" introductions based on other inmate's actions or suppositional actions is beyond an ove

broad use of the disciplinary process, it is an abuse of the process and in this case, a scarcely discriminatory abuse of the discipli ary process. It would appear historically that the reason for this discriminatory abuse is to transfer inmates from this yard to active yards or the SMU. It doesn't take much for your office to verify these allegations. Look at the cases that specifically SIS Officer Gallion has handled. If he can assume or suppose the possibility of an action, instead of actually catching inmates trying to introduce contraband, he just gives the "Attempted" suffix upon the shot and slams them anyway without the requisite facts to support such. The DHO is supposed to be impartial and is wholly partial here and this is because the nature of the inmates here at USP Tucson, Period. Not only look up SIS Gallion's shots but look up the transfers from the yard. Look at all the SMU referrals as well. It is unbelievable.

I was given shots based on someone else's kite and someone else's visit. Not only do my actions not deserve a 111A and 199 shot, the inmate Garcia doesn't either. There was absolutely no [illegible] facility through the mail or visit to justify an "attemp as defined by the disciplinary process. This [illegible] "attempted" suffix on shots is egregious and a scarcely abusive and discriminatory use of the disciplinary [illegible] them to fall under the 8th and 14th amendment and should be investi[illegible] court case is file I am trying every [illegible] ed. Not only please help me but help all of these inmates that have [illegible] given severe shots unjust[illegible] causing them to lose precious privileges and some to end up locked in a concrete box for over a year [illegible] the SMU from being transferred to an active yard. I suffered this action once... Now I face SMU time all from someone else's actions and the deliberate indifference of the administration here at USP Tucson. How much is enough? When has it become bad enough to warrant intervention...? Please Help!

Thank You,

[signature]

RECEIVED
OIG-INV-HQ
2017 AUG 10 AM 9:00




29

NATHAN ALLEN RAILEY, 11897-003
LEWISBURG USP UNT: B-BLOCK QTR: B02-213L
2400 ROBERT F. MILLER DRIVE
LEWISBURG, PA 17837

RECEIVED
Warden's Office

APR 03 2018

USP Lewisburg

**Administrative Remedy No. 926389-A2**
**Part B - Response**

This is in response to your Central Office Administrative Remedy Appeal where you challenge your designation to a Special Management Unit (SMU). You claim you were not afforded ample time to request staff representation and/or obtain witness statements in your defense. You allege your due process rights were violated. You request a rehearing with the assistance of a staff representative so you can present documentary evidence and witness statements.

The Bureau of Prisons (BOP) identified a need for SMUs to effectively manage inmate problems resulting from geographical groups and gangs, a history of serious and disruptive disciplinary infractions, inmates who committed a 100-level prohibited act after being classified as a member of a Disruptive Group or participated in, organized, or facilitated any group misconduct that adversely affected the orderly operation of a correctional facility. The BOP designates sentenced inmates to SMUs where greater management of their interactions is necessary to ensure the safety, security, or orderly operation of BOP facilities or protection of the public.

A review of the record indicates you received notice of the Hearing Referral for Designation to a SMU on November 17, 2017, and the hearing was held on November 21, 2017. You appeared at the hearing via telephone-conference and provided an oral statement for consideration. The record shows you declined staff assistance in compiling/obtaining documentary evidence or witness statements. You addressed your 100-level sustained incidents and did not raise any hearing issues. You had the opportunity to advise the Hearing Administrator at that time that you were not ready to proceed and needed more time to obtain evidence on your behalf. Based on all information received, the Hearing Administrator determined you met the criteria for designation to a SMU. This finding is based on the fact that you have a history of serious and disruptive disciplinary infractions such that greater management of your interaction with other persons is necessary to ensure the safety, security, or orderly operation of BOP facilities or protection of the public. Your disciplinary infractions include attempted introduction of drugs and greatest disruptive conduct (most like criminal email abuse).

**Administrative Remedy No. 926389-A2**
**Page 2**

By engaging in this kind of behavior, you showed no regard for BOP rules and regulations. Your actions demonstrate an inability to function in a less restrictive environment without being a threat to the secure and orderly operation of the institution. Closer supervision and adequate programming through greater management of your interaction with other persons is necessary in order to protect the safety of others and the security of the institution.

Based on our review, we concur with the Hearing Administrator's findings and the Regional Director's recommendation, which has been reviewed by the Designation and Sentence Computation Center and the Assistant Director, Correctional Programs Division, Central Office. Your placement is appropriate and consistent with the requirements of Program Statement 5217.01, SMUs, and this placement will not be terminated. There is no indication of due process or hearing violations.

Accordingly, your appeal is denied.

3/20/18
Date

Ian Connors, Administrator
National Inmate Appeals RME

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Railey, Nathan, A. (LAST NAME, FIRST, MIDDLE INITIAL) — 11897-003 (REG. NO.) — X-Block/cell 114 (UNIT) — SMU USP Lewisburg (INSTITUTION)

**Part A - REASON FOR APPEAL**

This Administrative Remedy is my appeal over my SMU Hearing that took place on Nov. 21st, 2017. I recieved my notice of the SMU Referral Hearing on Nov. 17th, 2017 from my Unit Manager. Please refer to the document attached labeled "Exhibit A" which is the very notice for the SMU Hearing Referral. The concerning issue that led to this Administrative Remedy comes from the third and last page of the notice (Exhibit A). This page clearly lists the rights I was to be afforded at the SMU Referral Hearing. Of the list, the concerning rights therein are "d" through "g." Both rights "d" and "e" pertain to presenting documentary evidence and witness statements through a staff representative... Please Refer to the attached sheet titled "BP-11 Continuance Sheet" for the rest of the arguments to this appeal.

Jan. 23rd, 2018
DATE

"By:" /s/ [signature] 28 USC §1746 "Without Prejudice"
SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
FEB 13 2018
Administrative Remedy Section
Federal Bureau of Prisons

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 926389 A1

**Part C - RECEIPT**

CASE NUMBER: ______

Return to: ______ LAST NAME, FIRST, MIDDLE INITIAL — REG. NO. — UNIT — INSTITUTION

SUBJECT: ______

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-11 Continuance Sheet

I was never given this right nor was it ever even discussed. I recieved this notice on Nov. 17th, 2017, four days after being signed and issued by D. Miller, CPS on Nov. 13th, 2017. This was the Hearing Administrator and this info is also on the last page of Exhibit A. I did not have time to even recieve a Staff Rep, much less compile any evidence or witness statements to my defense of my referral to the SMU. These rights were completely ignored by my Unit Team and even the Hearing Administrator. I am not familiar with this process and had not been properly informed of the critical nature of this hearing. The Hearing Administrator stated that I met the "criteria" for the SMU, a "criteria" for which I was provided absolutely no description of and was informed that my "oral statement" as defined by right "c." was to be defined by the Hearing Administrator as a "comment" and afforded absolutely no weight in said decision. I have a liberty interest in avoiding confinement in the SHU and the SMU and, as such, am afforded due process as defined in my Constitutional Rights. This hearing process, now concluded, is a slap in the face of my Constitutional Rights, due process, and the liberty interests that give rise to such. I request that my hearing be re-scheduled wherein I am afforded the time to present documentary evidence and witness statements, utilizing a Staff Representative as clearly outlined in my rights delineated in the Notice of the Hearing Referral and as due process dictates. Thank You.

Jan. 23rd, 2018
(Date)

"By:" /s/ [signature] 28 USC §1746 "without Prejudice"

July 16th, 2018
Nathan Railey
Inmate #-11897-003
U.S. Penitentiary Lewisburg
P.O. Box 1000
Lewisburg, Pa. 17837

The US District Court for
The Middle District of Pennsylvania
William J. Nealon Federal Building
235 N. Washington Ave.
P.O. Box 1148
Scranton, Pa. 18501

Attn: Clerk of the Clerk:

Contained herewith you will find my Petition for Writ of Habeas Corpus Pursuant to 28 USC § 2241, Motion to Proceed In Forma Pauperis, Notification of Authorization, and Notification of Initial Screening and Review Pursuant 28 USC § 636 that I wish to file in this court. I honestly was unsure if I had the requisite to provide a Certificate of Service to the Defendant in a Petition such as this; therefore none was provided.

Please provide me with any rules and/or requisites needed for me to pursue this matter correctly. Thank You.

Respectfully

July 16th, 2018
(Date)

[signature]
(signature)

Nathan Railey
Inmate #11897-003
United States Penitentiary Lewisburg
P.O. Box 1000
Lewisburg, Pa. 17837

In the United
In The Middle District of Pennsylvania

Nathan Railey, Inmate #11897-003 (Plaintiff)

Vs.

David J. Ebbert, Warden of Lewisburg USP (Defendant)

Case No: (Not Numbered Yet)

Notification of Initial Screening and Review Pursuant 28 USC § 636

Notification of Initial Screening and Review Pursuant 28 USC § 636

① Comes Now, Nathan Railey, Inmate #11897-003, on this day, July 16th, 2018, acting Pro Se, humbly presents his Notification of Initial Screening and Review Pursuant 28 USC § 636 to this court to streamline the initial filing process.

② This notification is just to provide the court the answer to the customary request sent to a new petitioner on whether he'd prefer a judge or a magistrate to review the action being submitted. As such, it doesn't matter to the petitioner whether a magistrate hears this action. Therefore, the petitioner leaves that issue up to the court's discretion since a magistrate can more than adequately handle this issues contained within this action.

Respectfully Submitted,

July 16th, 2018
(Date)

(Signature)

Inmate Name: Nathan Railey
Register Number: 11897-003
United States Penitentiary
P.O. Box 1000
Lewisburg, PA 17837

JUL 17 2018

CERTIFIED MAIL

7015 1730 0000 7823 3753

TD
07-15-2018

RECEIVED
SCRANTON
JUL 19 2018
PER ____ DEPUTY CLERK

17 JUL 2018

Legal Mail

U.S. District Court for
The Middle District of Pennsylvania
William J. Nealon Federal Building
235 N. Washington Ave.
P.O. Box 1148
Scranton, Pa. 18501

Legal Mail

Legal Mail