# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NATHAN A. RAILEY, | : | Civil No. 3:18-cv-1435 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| DAVID J. EBBERT, | : | |
| Respondent | : | |

## MEMORANDUM

Presently before the court is an amended petition for writ of habeas corpus (Doc. 12) pursuant to 28 U.S.C. § 2241, filed by Petitioner Nathan A. Railey ("Petitioner" or "Railey"), an inmate formerly incarcerated at the United States Penitentiary at Lewisburg ("USP-Lewisburg"), Pennsylvania. He is currently housed at the United States Penitentiary at Coleman, Florida.

Railey challenges prison disciplinary proceedings that took place during his incarceration at the United States Penitentiary at Tucson, Arizona ("USP-Tucson"), as well as his subsequent placement in the Special Management Unit ("SMU") and transfer to USP-Lewisburg. The petition is ripe for disposition and, for the reasons that follow, will be partially granted.

## I. Background

The Federal Bureau of Prisons ("BOP") disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541 through 541.8 (2011). These regulations dictate the manner in which disciplinary action may be taken should a

prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for a hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. Id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. Id.

On May 27, 2017, Railey received incident report 2992297 charging him with a the following violations of the Prohibited Code Act: Code 111A, "Attempted introduction of contraband"; Code 196, "Use of mail (Email) for criminal purposes; and, Code 217, Giving money to, or receiving money from, any person for the purpose of introducing contraband." Use of the mail for abuses other than criminal activity." (Doc. 1, p. 6). Section 11 of the report contains the following description of the incident:

> On 5/27/17, while reviewing ongoing SIS investigations it was discovered the case pertaining to this inmate closed on 5/25/2017 at 4:14 p.m. At the completion of the investigation, it was determined inmates Doreteo Garcia, Reg. No. 32261-054, Nathan Railey, Reg. No. 11897-003 and Jacob Voshell, Reg. no. 13362-029 collectively conspired to facilitate the introduction of contraband "Suboxone" into USP Tucson through the visitation room, during a visit. Specifically, Inmate Garcia has been using his personal phone and email account, as well as the phone accounts of inmates [ ] and [ ] to contact the phone number [ ], which is the number used by [ ] the Fiancee of Inmate Garcia and [ ], which is the number used by an unknown female associated with Inmate Garcia to discuss in code the purchase, bundling and planned

> introduction of contraband during a visit that is scheduled to take place over the weekend of May 19, 2017. It was also determined the trip was being funded by a friend [ ], of Inmate Voshell, with the promise of Inmate Garcia repaying him double the price of the flight in commissary items, to prevent staff from identifying the movement of money or his connection to the introduction. The phone number used by Inmate Voshell to discuss the plane ticket with [ ] was identified as [ ] during this investigation due to Inmate Railey providing it in an outgoing email utilized by another inmate's email account. It was also determined during the investigation, that Inmate Nathan Railey, Reg. No. 11897-003 directed his father [ ] and brother [ ] during personal visits in the visitation room and through emails to the following email addresses: [ ] and [ ], to make contact with a female named [ ] and [ ] about making travel arrangements and lodging reservations for [ ] and to assist with the introduction of contraband by having the contraband "Suboxone" sent directly to his brother, [ ] home address in [ ] which would then be given to [ ] on the day of the planned visit. The code words being used during this case to discuss the introduction are as follows: "Oranges" refers to Suboxone, "1st birthday" refers to the introduction in the Visitation Room and "pinata" referred to balloons full of drugs. "Thing" refers to the contraband Suboxone which was discussed in an email from inmate Railey to his brother on 5/14/17 at 7:49 p.m.

(Doc. 12, p. 14; Doc. 15-1, p. 5). During the UDC review, Railey indicated that he would like the Disciplinary Hearing Officer ("DHO") to speak to "Garcia" first. (Id.). The UDC referred the matter to the DHO with recommendations for various sanctions. Prison staff advised Railey of the "Inmate Rights at Discipline Hearing" and indicated that he understood his rights. (Id. at 7, 8). He declined the assistance of a staff representative and requested witnesses appear to testify "that his incident is a case of extortion. Not about money." (Id. at 9).

At the June 30, 2017 hearing, Railey acknowledged that he declined the offer of staff representation and identified witness to be called. (Id. at 10). Railey's inmate witnesses testified at the hearing. (Id. at 10, 11). One witness testified that "[Railey] was coming to the table so I punked him out. He passed a message through his brother to my

girl. I didn't get any money from him." (Id. at 11). Another testified that "I was supposed to tell you that, [ ] was threatening him through the vent if he snitched. He was threatening him." (Id.). A third witness testified "People were making Railey (Nate) do things for them, like passing messages in the visiting room. He didn't receive anything in return. Railey used to sit at the Texas table and was being bullied and pressured." (Id. at 11). Railey testified that "SIS Interview admission is not correct; I did not say that. The word "Thing' has nothing to do with Suboxone. It had to do with a flight. Emails were all over the flight. I have a bad history at Tucson, that is why they are doing this. I screwed up with getting extorted. I'm not trying to screw this up." (Id. at 10). Railey presented no documentary evidence for consideration, and made no complaints of procedural error. (Id.).

The DHO considered the following documentary evidence: Incident Report and Investigation; "Inmate Investigative Report TCP-17-0181; TRUFONE Report dated 5/15/17; TRUEVIEW Email message Report dated 5/6/17 (18): TRUFONE Monitored Call Sheets (2); Email Address Center Report (2); Outside Person Report (3) and pictures (4)." (Id. at 11).

The DHO also considered confidential information not revealed to Railey and documented in a separate report. (Id.). The DHO noted that "[i]nformation that was provided corroborated information contained in the SIS Investigation and what was communicated to the DHO throughout the hearing." (Id.).

The DHO found that based upon the evidence the charge of code 111A, attempted introduction of narcotics and code 199, disruptive conduct, "are the most accurate

charges describing the prohibited acts committed" by Railey. (Id. at 12). He then concluded that Railey "committed the prohibited act(s) of Introduction or making of any narcotics, marijuana, drugs, alcohol, intoxicants, or related paraphernalia, not prescribed for the individual by the medical staff (Attempted); Conduct which disrupts or interferes with the security or orderly running of the Institution or Bureau of Prisons, Code(s) 1 I 1A, 199. (Id.). In so finding, he considered the reporting officer's written account and recited that statement *in toto*. (Id. at 12). Under the heading "DHO Findings," reiterates that "[t]his decision is based on the statement of the reporting officer." (Id. at 12). contained in Section 11 of the incident report and the evidence supporting that report. The DHO also noted that "although Inmate Railey denies the charges against him, he has provided no exculpatory evidence on his behalf to refute the charge levied against him other than his denial." (Id.).

In sanctioning him with a disallowance of forty-one days of good conduct time for each prohibited act, and the loss of various privileges, the DHO reasoned that:

> The action/behavior on the part of any inmate to use/possess/introduce drugs or alcohol threatens not only the health, safety and welfare of himself, but that of all other inmates and staff within the institution. The mere presence of drugs/alcohol in a correctional facility creates an environment conduce [sic] to violence. In the past, inmates under the influence of drugs/alcohol have become violent towards others, which cannot and will not be tolerated. The sanctions imposed by the DHO were taken to let the inmate know that he, and he alone, will be held responsible for his actions/behavior at all times….
>
> The Bureau of Prisons has a responsibility to keep offenders confined within its environs to protect the public and to ensure that sentences are served.
>
> PLRA exemplary compliance requires the DHO disallow good conduct time.

(Id.).

On appeal, the Regional Director expunged the Code 199 violation but upheld the Code 111A finding of guilty. (Id. at 15).

Railey asserts that upon conclusion of the disciplinary proceedings, prison officials notified him of a Special Management Unit ("SMU") Referral Hearing. Following the November 21, 2018 hearing, officials placed him in the SMU. (Doc. 12, pp. 9-11). He seeks removal from the SMU and a transfer back to USP-Tucson.

After exhausting all available administrative avenues of review, Railey filed the instant petition and amended petition. (Doc. 1; Doc. 12, p. 2; Doc. 15, n.1).

**II.    Discussion**

   **A.    Disciplinary proceedings**

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V.   Because federal inmates possess a liberty interest in good conduct time, see Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991), the loss of such time in the context of prison discipline proceedings is subject to judicial review. Review, however, is limited to ensuring that the prisoner was afforded certain procedures, the action against him was not arbitrary, and that the ultimate decision has some evidentiary support. Superintendent v. Hill, 472 U.S. 445, 45 457. (1985). Specifically, the inmate is to be provided the following: 1) written notice of the claimed violation at least twenty-four hours in advance of a hearing; 2) an opportunity to call witnesses and present

documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals; 3) aid in presenting a defense if the inmate is illiterate or the complexity of the case makes it unlikely that the inmate will be able to collect and present the necessary evidence for an adequate comprehension of the case; 4) an impartial tribunal; and 5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff, 418 U.S. at 564-72. As stated *supra*, the DHO's decision must be supported by some evidence in the record. Hill, 472 U.S. at 454. This is a low threshold as the relevant question is whether there is any evidence in the record that could support the DHO's decision.

Railey specifically contends that the DHO's finding of guilt of a Code 111A prohibited act has no evidentiary support. In the section titled "Specific Evidence Relied on to Support Findings," the DHO recites, verbatim, the "description of incident" paragraph contained in the incident report and makes no reference to any specific evidence. (Doc. 15-1, p. 11). Under the heading "DHO Findings," the DHO states "This decision is based on the statement of the reporting officer." (Id. at 12). For the reasons that follow, the Court finds this to be insufficient to meet the requirements that the DHO issue a written statement as to the evidence relied on and that the decision be supported by some evidence in the record.

The BOP initiated the disciplinary process with an incident report containing a "Description of Incident." The description is the reporting officer's summary of a lengthy and complex Special Investigative Services ("SIS") Investigation that spanned weeks. It is laden with specific dates, details, phone numbers, email addresses and names

of numerous individuals, both inside and outside prison walls. Despite the detail, it is simply a description intended to summarize the incident in a manner sufficient to initiate disciplinary proceedings; it is without reference to supporting evidence garnered during the investigation. As such, because of the nature of the incident and complexity of the underlying SIS investigation, the description of incident cannot, standing alone, constitute evidence.[1]

At the hearing, Railey and three other inmates testified. The DHO had the benefit of documentary evidence in the form of the investigative report, TRUFONE and TRUVIEW Reports, TRUFONE call sheets, the Email Address Center Report, an "Outside Person Report," pictures, and confidential information. The DHO's sole reliance on the reporting officer's description of the incident and failure to specify the evidence relied upon in arriving at a finding of guilt is confounding given the breadth of evidence presented at the hearing.

The DHO's failure to provide a written statement of the evidence relied upon and to identify some evidence in support of the finding of guilty of Prohibited Code Act, Code 111A, compels this Court to partially grant the petition to the extent that the matter will be remanded to the BOP for a new hearing on this charge.

**B.     SMU Placement**

---

[1] Conversely, courts have concluded that an incident report description comprised of a reporting officer's eyewitness account may satisfy the "some evidence" standard. See Benson v. United States, 625 F. App'x 20, 22 (3d Cir. 2015),citing Hudson v. Johnson, 242 F.3d 534, 536–37 (5th Cir.2001); McPherson v. McBride, 188 F.3d 784, 786 (7th Cir.1999).

Habeas relief is available to challenge the fact or duration of confinement, <u>Preiser v. Rodriguez</u>, 411 U.S. 475, 498-99 (1973); <u>Leamer v. Fauver</u>, 288 F.3d 532, 540 (3d Cir. 2002). The claim that placement in the SMU may be brought *via* a habeas petition because it implicates the execution of a sentence and duration of confinement has been presented to, and rejected by, the United States Court of Appeals for the Third Circuit. <u>Cardona v. Thompson</u>, 681 F.3d 533, 537 (3d Cir. 2012) (finding that prolonged placement in the SMU does not concern the execution of a sentence because such placement is not inconsistent with the judgment of sentence). The claim is not cognizable in a habeas petition. Rather, it must be brought in a civil rights action. (<u>Id.</u> at 535).

### III. Conclusion

For the reasons set forth above, the petition for writ of habeas corpus will be partially granted inasmuch as the matter will be remanded to the BOP for a new hearing on the Code 111A charge. The petition will be denied in all other respects.

An appropriate order will issue.

**BY THE COURT:**

<u>s/James M. Munley</u>
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: June 7, 2019